**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.** **NO. 5:25-CR-00029-KKC-MAS**

**JAMES BRUCE TACKETT,**

**Defendant.**

**MEMORANDUM OPINION & ORDER**

The Indictment alleges that Defendant James Bruce Tackett ("Tackett") knowingly used the internet to entice a minor to engage in sexually explicit conduct in violation of 18 U.S.C. § 2422(b). The United States properly moved for Tackett's detention under 18 U.S.C. § 3142(f)(1)(A) & (E). Based on the testimony, proffer, arguments, and the Pretrial Services Report ("PSR") tendered by the United States Probation Office, the Court finds that Tackett's release poses an irremediable risk of danger to the community and accordingly grants the government's motion for detention for the reasons explained below.

## I. BACKGROUND

The Court held a detention hearing on March 26, 2025. [DE 11]. According to Task Force Officer Anthony Gatson with the Madison County Sheriff's Office, law enforcement became aware of the conduct underpinning Tackett's federal charges

following an investigation by local law enforcement in Madison County. Law enforcement learned that Tackett sent his then-14- and 17- year old biological nieces messages on Facebook Messenger requesting nude photographs, sexual contact with him, and that he sent an explicit photograph of himself to one of the girls.

Law enforcement's investigation revealed many more alarming facts and allegations. Gatson testified Tackett's ex-wife told the sheriff's office that she and Tackett began having sexual contact when she was only 14 years old and he was well into his adult years. Gatson described Tackett as "grooming" his ex-wife when she was a teenager. Gatson testified that Tackett's ex-wife described him as "violent," saying he would "beat" her, and that is why she obtained a Domestic Violence Order against him in 2023. Tackett's ex-wife also told Gatson that Tackett was a regular narcotics user, though she had not seen him in two years.

Gatson also interviewed one of the minor victims in this case. The minor victims listed in the Indictment were placed in Tackett's care after removal from their home. The minor victim reported that she had observed Tackett being violent towards his ex-wife when they all lived together at Tackett's home. The minor further gave Gatson the name of another alleged minor victim, previously unknown to law enforcement. Gatson interviewed this third minor victim, who was the daughter of one of Tackett's prior girlfriends, who had also lived with Tackett on two occasions. This third minor victim told Gatson that Tackett made inappropriate comments to her, to include an offer to pay her a cigarette for a photograph of her breasts, and that he solicited her for oral sex. This third minor victim said that when she reported

Tackett's conduct towards her to her mother, Tackett threatened to kill her. This third minor victim provided screen shots of her conversations with Tackett to Gatson.

Gatson summarized that his investigation ultimately revealed that Tackett lived with a woman who had two minor daughters; eventually, the mother moved out and Tacket began a sexual "relationship" with both of her daughters. Additionally, and at another point in time, Tackett had custody of his two teenage nieces and began soliciting them for nude photographs and sexual favors. Finally, Tackett's ex-wife told Gatson he (Tackett) began having sexual contact with her when he was an adult and she was only 14 years old.

## II. ANALYSIS

### A. THE BAIL REFORM ACT

The charges in the Indictment involve minor victims, therefore a detention presumption arises under the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, ("BRA") both as to a risk of nonappearance and as to a risk of danger to the community. 18 U.S.C. § 3142(e)(3)(E). In such cases, a defendant carries a "burden of production" to overcome the presumption by offering "at least some evidence" that he is neither at risk of nonappearance nor endangering the community. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Id.* If the defendant fails to rebut the presumption, he must be detained. Even if the defendant rebuts the presumption, the presumption remains a factor in determining detention. *Id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive

judgment that particular classes of offenders should ordinarily be detained prior to trial.").

However, if a defendant rebuts the presumption of detention, the burden shifts back to the United States to persuade the Court that detention is nevertheless warranted. Detention, based on danger, must rest on facts supported by clear and convincing evidence. 18 U.S.C. § 3142(f). Nonappearance-based detention decision must rest on facts supported by a preponderance of evidence. *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-82-DCR, 2006 U.S. Dist. LEXIS 49661, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Further, almost any conditional release ultimately depends on a court's assessment of a defendant's good faith intentions and predicted compliance with conditions imposed. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (evaluating predicted good faith compliance as critical release component).

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The hearing is informal, and the Court may consider a wide range of proof, weighing the evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291 [published in full-text format at 1998 U.S. App. LEXIS 13553], 1998 WL 381686, at *1 (6th Cir. June 22, 1998). The nature and quality of proof impacts its probative value and weight in the detention calculus. The § 3142(g) factors guide the analysis.

## B. Defendant's Risk of Nonappearance

Preliminarily, the Court finds that Tackett presented sufficient evidence to overcome the presumption of detention as to his risk of non-appearance. Tackett

offered the testimony of his sister, Jaime Gregory, who testified that Tackett could live at her home with her and their elderly mother. Gregory testified she would drive him to court, be at the home most of the time, would not tolerate substance use, and would ensure Tackett only left the home for work and court appearances This testimony was probative of the likelihood that he will appear for future Court proceedings and enough to overcome Tackett's light burden of production.

Turning to whether the United States has established by a preponderance of the evidence that Tackett presents a risk of nonappearance, the Court finds that the government has not met its burden. The government argued Tackett's substance use and several prior failures to appear in court suggest he is a risk of nonappearance in this case. The PSR reflects Tackett failed to appear in court for driving under the influence charges dating back to 2002 and 2008, which resulted in warrants being issued. However, the Court finds these instances have limited probative value in assessing his current risk of nonappearance because these failures to appear occurred over a decade ago, diminishing their relevance in predicting Tackett's present likelihood of appearing for court. Montgomery County District Court issued two additional bench warrants for nonappearance in another driving under the influence case in 2023 and 2024. The United States further argued that his sister is not an appropriate custodian because she was not aware of his substance use that was occurring while he lived with her, suggesting that she was not as carefully supervising Tackett's activities while on state bond as she testified to.

Accordingly, while Tackett's past court history warrants consideration, the government has not presented sufficient evidence to show that he presently poses a serious risk of nonappearance.

### C. DEFENDANT'S RISK OF DANGER TO THE COMMUNITY

The Court likewise finds that Tackett has presented sufficient evidence to rebut the presumption of detention as to dangerousness. Testimony from Tackett's sister attested positively to his character and a living situation that could reduce (in Tackett's view) the danger to the community. This testimony satisfies the defendant's burden of producing "some evidence" that he does not pose a danger, thereby overcoming the presumption of detention. *See Stone*, 608 F.3d at 945; *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (requiring a defendant to present "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (holding that a defendant must present "probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger").

While Tackett has rebutted the presumption of detention regarding his dangerousness, the Court finds that, under the BRA framework below, the government has proven by clear and convincing evidence that he remains an irremediable danger to others and the community.

#### 1. Nature and Circumstances of the Offense

The first factor asks the Court to weigh "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves

a minor. . . ." 18 U.S.C. § 3142(g)(1). Tackett's alleged crimes involve minors and are consequently crimes of violence. 18 U.S.C. § 3156 (defining "crime of violence" as used in the BRA to include "any felony under chapter . . . 117[.]"). *United States v. Champion*, 248 F.3d 502, 506 (6th Cir. 2001) (recognizing that violations of federal laws designed to protect minors constitute crimes of violence); *United States v. Campbell*, 256 F.3d 381, 397–8 (6th Cir. 2001); *see also United States v. Abad*, 350 F.3d 793, 798–99 (8th Cir. 2003) (recognizing that a crime involving a minor victim constitutes a crime of violence).

The allegations against Tackett are crimes that Congress specifically set apart as so dangerous that they require the presumption of detention. *United States v. Jakits*, No. 23-3011, 2023 U.S. App. LEXIS 12137, at *4 (6th Cir. May 17, 2023) (quoting *Champion*, 248 F.3d at 506) ("Congress applied the presumption to offenses involving minors to emphasize that using children to produce sexually explicit materials 'can result in physical or psychological harm, or both, to the children involved . . . and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years.'"). Critically, "[t]he presumption in favor of detention does not vanish simply because a defendant comes forward with evidence to rebut it. Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class.'" *United States v. Lattner*, 23 Fed. App'x. 363, 364, (6th Cir. 2001) (citing *United States v. Martir*, F.2d 1141, 1144 (2d. Cir. 1986).

**2. <u>Weight of the Evidence of Dangerousness</u>**

The second factor—the weight of the evidence of a person's dangerousness—goes only to the likelihood that the defendant will pose a danger to the community or a risk of flight; it is not a pretrial determination of guilt. *Stone*, 608 F.3d at 948. In weighing the strength of the evidence, the district court may not modify or limit the defendant's presumption of innocence. 18 U.S.C. § 3142(j).

Given the facts alleged—and their inherent dangerousness—the weight of the evidence of dangerousness is inextricably intertwined with the weight of the evidence as to the crime alleged. The volume of allegations of inappropriate and illegal electronic and physical contact with teenage girls over a period of *years* weighs heavily in this Court's dangerousness analysis. And although the Indictment does not allege that Tackett has committed any hands-on offenses involving minor victims, the Court notes that the charge itself is strongly suggestive that Tackett would commit a hands-on offense. Further, other evidence indicates he has committed hands-on offenses in the past. Considered together, this is immense evidence of danger. "[S]exual exploitation of children via the internet, even without physical contact, harms children in real and lasting ways." *United States v. Pece*, No. 1:20-cr-186-1, 2020 U.S. Dist. LEXIS 197356, 2020 WL 6263640, at *5 (N.D. Ohio Oct. 23, 2020). This factor weighs heavily in favor of danger-based detention.

**3. <u>History and Characteristics of the Person</u>**

The history and characteristics of a defendant include "the person's character, physical and mental condition, family ties, employment, financial resources, length

of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). Additionally, they include whether the defendant was on probation or parole when he committed the offense. 18 U.S.C. § 3142(g)(3)(B).

Here, the Court cannot overstate the importance of the allegations, from multiple victims, of Tackett's pattern of grooming and enticing or attempting to entice teenage girls to engage in sexual conduct with him. Far beyond the charges in this Indictment, it appears Tackett takes every opportunity to exploit young girls who may be vulnerable. The testimony from Gatson was the Tackett had done so with four different girls who lived with him, including two who the state entrusted in his care after they were removed from their parents' care. Further, the testimony was consistent that Tackett has a penchant for violence, supported by the Domestic Violence Order a court granted his ex-wife in 2023. Finally, both the testimony and by Tackett's own admission, he has a serious substance use problem and is a daily methamphetamine user.

**4. <u>Nature and Seriousness of the Danger</u>**

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Even where there is no physical contact with an actual child, "[*j*]*ust one* sexually-related offense against *just one* minor is enough to imply dangerousness." *United States v. Demarcus Bristuan Fitzhugh*, 2016 WL 4727480, at *5 (E.D. Mich.,

Sept. 12, 2016) (emphasis in original). "The sexual abuse of minors 'leaves indelible memories' from which a 'victim will likely continue to suffer throughout her life . . . .'" *Downs*, 406 F. Supp. 3d at 1320 (quoting *United States v. Taylor*, 736 F. App'x 216, 222 (11th Cir. 2018)).

Under this BRA factor, the Court assesses both "the magnitude of the harm that will occur if the danger materializes and of the probability that it will materialize." *United States v. Boyd*, 475 F.3d 875, 877–78 (7th Cir. 2007). As another court put it, "[a]dequate protection is a function of two variables: the level of risk that conduct will occur and the level of harm that will be inflicted if that conduct does occur." *United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (en banc). Here, the potential harm is immense. The United States has presented probative evidence that Tackett had contact sexual contact with minors prior to the allegations in this case, and then attempted to entice his teenage nieces, entrusted to his care, to engage in sexual contact with him. This concern is amplified by the fact that Tackett's history includes a Domestic Violence Order and ongoing narcotics use, both of which pose a threat of danger to those around him and the community at large. This factor weighs heavily in favor of finding Tackett a danger to the community.

**D. NO CONDITIONS CAN ADEQUATELY ADDRESS THE DANGER RISK**

The United States has, thus, shown by clear and convincing evidence that Tackett is a danger to the community and to others. The Court further finds no release conditions could sufficiently mitigate that danger. Most notably, Tackett's proposed release residence is with his sister, who was not even aware of his daily methamphetamine habit even though he lived with her for seven months, and her

home is next door to minor children. If his sister does not know that he has been using methamphetamine while on state bond, she likely would not be able to detect continued illegal online activity. The nature of offenses like his often means that even the defendant's closest family members remain unaware of the conduct occurring under their own roof. Although Tackett has not had any allegations of inappropriate contact with minors since his state charges began, his prior alleged lengthy history of such conduct with multiple victims implies he may continue to engage in solicitation and abuse of minors if presented with the opportunity. Further, his threat to one of the alleged victims that he "would kill her" because she reported the abuse, considered with his history of intimate partner violence, indicates Tackett poses a risk of being violent towards the victims named in the Indictment. The nature and seriousness of these risks are far too great for any conditions (which the Court does not believe Tackett would follow) to mitigate.

## III. CONCLUSION

The Court finds that the United States failed to prove by a preponderance of evidence that Tackett is an irremediable risk of nonappearance, but they did prove by clear and convincing evidence that Tackett is an irremediable danger to the community. As such, the BRA mandates detention. The Court has assessed the record, contemplated the risks, evaluated conditions, and determined that no conditions exist that can reasonably assure Tackett will not pose a danger to another or the community. Accordingly, the Court **GRANTS** the United States' oral motion for detention and **DETAINS** Defendant James Bruce Tackett.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Signed this the 8th of April, 2025.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY